| | |
|---|---|
| 1 | M. JOHN CARSON, CA BAR NO. 41285 |
| | E-MAIL:  jcarson@foley.com |
| 2 | **FOLEY & LARDNER LLP** |
| | 555 SOUTH FLOWER STREET, SUITE 3500 |
| 3 | LOS ANGELES, CA 90071-2411 |
| | TELEPHONE:  213.972.4500 |
| 4 | FACSIMILE:  213.486.0065 |
| 5 | Attorneys for Plaintiff |
| | The Winsford Corporation |

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE WINSFORD CORPORATION, *a California corporation*, | Case No:  CV 04-1083 JFW |
| *Plaintiff*, | **THE WINSFORD CORPORATION'S NOTICE OF MOTION AND MOTION FOR CONTEMPT** |
| vs. | |
| EXPORT DEPOT, D/B/A HOTEL-CARTS.COM, *a Canadian corporation*, | District Judge:   John F. Walter |
| | Complaint Filed:   2/18/2004 |
| *Defendant*. | Date:   8/27/2012 |
| | Time:   1:30 PM |
| | Dept.:   16 |

**TO THE HONORABLE COURT, ALL PARTIES, AND ALL ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 27, 2012 at 1:30PM, Plaintiff The Winsford Corporation ("Winsford") will, and hereby does, move the Court for an order (i) finding Export Depot in contempt of the Court's May 27, 2004 injunction ("Injunction") in the present case, (ii) ordering disgorgement of any of Export Depot's profits resulting from the contempt, (iii) ordering Export Depot to pay Winsford's attoneys' fees and costs in bringing the present motion, and (iv) imposing a coercive fine of $10,000.00 per week on Export Depot until it complies with the Injunction.

Winsford brings this Motion because Export Depot is marketing and selling luggage carts whose design fails to keep a safe distance from Winsford's Registered Trademark No. 1,682,820 as required by the Injunction and applicable case law discussed in the Memorandum in support of this Motion.  Pursuant to Local Rule 7-3, and as explained in more detail in the accompanying Memorandum and Declaration, Winsford's counsel attempted to contact Export Depot and its counsel numerous times without success.  Upon finally reaching Export Depot's President, Guil Hetzroni, it was made clear that Export Deport would not stop marketing and selling the offending luggage carts, and that Winsford should proceed with formal legal action.

Dated: July 18, 2012                FOLEY & LARDNER LLP


                                    By:  /s/ M. John Carson
                                         M. JOHN CARSON
                                         Attorneys for Plaintiff
                                         The Winsford Corporation

TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................1
II. BACKGROUND AND PROCEDURAL HISTORY .....................................1
    A. The 2004 Litigation..................................................................................1
    B. Export Depot's Present Acts Of Contempt............................................5
III. THE COURT HAS JURISDICTION OVER EXPORT DEPOT ...................6
IV. APPLICABLE LAW ........................................................................................6
V. ARGUMENT .....................................................................................................8
    A. Infringement Was Admitted In The 2004 Action ..................................8
    B. Export Depot's Converging Arches Luggage Cart Does Not "Keep A Safe Distance" From Winsford's Design ...............................8
    C. Export Depot's Contempt Is Willful.....................................................10
    D. Winsford Is Entitled To Compensatory Damages And Coercive Sanctions .................................................................................................11
VI. CONCLUSION ...............................................................................................13

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bd. of Supervisors of the La. State Univ. v. Smack Apparel*,
  574 F. Supp. 2d 601 (E.D. La. 2008) ................................................................ 12

*Guru Denim, Inc. v. L.A. Idol Fashion, Inc.*,
  No. 08-1798, 2012 U.S. Dist. LEXIS 10363 (C.D. Cal. Jan. 25, 2012) ............ 12

*Howard Johnson Co. v. Khimani*,
  892 F.2d 1512 (11th Cir. 1990) .................................................................... 7, 11

*Manhattan Industries, Inc. v. Sweater Bee by Banff, Ltd.*,
  885 F.2d 1 (2d Cir. 1989) .................................................................................. 12

*McComb v. Jacksonville Paper Co.*,
  336 U.S. 187 (1949) ............................................................................................ 6

*Oddzon Prods. v. Diana Dolls Fashions*,
  No. 92-20578, 1997 U.S. Dist. LEXIS 4981 (N.D. Cal. Jan. 15, 1997) ........... 12

*Skydive Ariz., Inc. v. Quattrocchi*,
  No. 05-2656, 2010 U.S. Dist. LEXIS 49972 (D. Ariz. Apr. 26, 2010) ............... 8

*United States v. United Mine Workers of America*,
  330 U.S. 258 (1947) .......................................................................................... 11

*Virgin Enters., Ltd. v. Virgin Petroleum, Inc.*,
  No. 99-12826, 2000 U.S. Dist. LEXIS 8100 (C.D. Cal. Jan. 19, 2000) ........... 7-8

*Vision Sports, Inc. v. Melville Corp.*,
  888 F.2d 609 (9th Cir. 1989) ................................................................. 8, 10-11

*Wolfard Glassblowing Co. v. Vanbragt*,
  118 F.3d 1320 (9th Cir. 1997) ...................................................................6-7, 9

## I. INTRODUCTION

The Winsford Corporation ("Winsford") respectfully moves the Court for an order finding defendant Export Depot in contempt of this Court's May 27, 2004 Final Judgment (D.I. 14, "Injunction," attached hereto as Ex. 1[1]) enjoining Export Depot from marketing or selling luggage carts confusingly similar to Winsford's trademarked luggage cart design. Winsford also seeks an award of compensatory damages, including attorneys' fees and costs, as well as a coercive fine against Export Depot to compel its compliance with the Injunction.

## II. BACKGROUND AND PROCEDURAL HISTORY

### A. The 2004 Litigation

Winsford brought this action against Export Depot (b/d/a Hotel-Carts.com) on February 18, 2004 alleging trademark infringement of Winsford's registered design mark covering its famous luggage cart, which has been sold worldwide by Winsford's Forbes Industries division for more than twenty years. D.I. 1. Winsford's design is covered by Federal Trademark Reg. No. 1,682,820 ("'820 Mark") and California Trademark Reg. No. 90,138. Exs. 2 and 3, respectively. Winsford's trademark design, along with representative images of actual Winsford products are shown in **Figure 1** below.

---

[1] "Ex." refers to exhibits to the concurrently filed Declaration of Jean-Paul Ciardullo ("Ciardullo Decl.").

**FIGURE 1**
**Winsford's Registered Mark and Sample Products**





Winsford's design is immediately distinguishable from traditional luggage carts because it has four posts converging to an upper middle point, rather than parallel or solitary crossbars. For comparison, images of traditional luggage carts are shown in **Figure 2** below.

WINSFORD MOTION FOR CONTEMPT
CASE NO. CV 04-1083 JFW

4836-4553-5504.2

**FIGURE 2**
**"Traditional" Luggage Carts**



In 2003, Export Deport had been selling a cart with a design identical to Winsford's luggage cart design. *See* **Figure 3** below.

**FIGURE 3**
**Export Depot's First Infringing Cart From 2003**




3

WINSFORD MOTION FOR CONTEMPT
CASE NO. CV 04-1083 JFW

4836-4553-5504.2

1   When Winsford sent cease and desist letters to Export Depot, Export Depot
2  responded with a short fax on October 31, 2003 saying that it would remove the
3  cart from its website.  Ex. 4.  However, just a few weeks later, Winsford
4  discovered that Export Depot had posted a nearly identical cart for sale on Hotel-
5  Carts.com, one with partially angled bars rather than smoothly curved bars.  *See*
6  **Figure 4** below.  Winsford again wrote to Export Depot (*id.*), but Export Depot
7  refused to remove the cart from its website, prompting Winsford to file the present
8  suit in February 2004.

**FIGURE 4**
**Export Depot's Infringing Cart From 2004 Litigation**



24   On May 21, 2004, Winsford and Export Depot executed a settlement
25  agreement ("Settlement Agreement") whereby Export Depot covenanted that it
26  "will not at any time subsequent to [the Effective Date] manufacture, advertise,
27  sell, or distribute the Subject Carts and/or any luggage carts <u>confusingly similar</u> to
28  the '820 Mark."  Ex. 5, Section 3 (emphasis added).  On May 27, 2004, pursuant to

4

the parties' stipulation, the Court entered the Injunction, which provides at Paragraph 7 that:

> Export Depot and each of its agents, employees, servants, successors and assigns, and all others in privity or acting in concert therewith, are permanently enjoined from: (a) using the '820 Mark or any luggage cart designed <u>confusingly similar</u> thereto; … (c) manufacturing, advertising, demonstrating, promoting, offering for sale, selling, distributing and taking orders for the luggage carts that incorporate the '820 Mark or any <u>confusingly similar</u> design. (emphasis added)

### B.  Export Depot's Present Acts Of Contempt

In April 2012, Winsford became aware that Export Depot was selling a new line of luggage carts on its Hotel-Carts.com website under the "Monarch" brand name featuring four bars converging to an upper center (referred to herein as the "Converging Arches" design). Ex. 6. Although the posts of Export Depot's Converging Arches cart do not contact at the center, they curve toward a central point and come close to touching such that the design gives the same impression as, and is confusingly similar to, Winsford's design. Furthermore, as explained in Section IV, *infra*, Export Depot has an obligation to "keep a safe distance" from violating the Injunction. Examples of the accused Converging Arches carts are shown in **Figure 5** below.

**FIGURE 5**
<u>Export Depot's Present Converging Arches Design</u>



5

1  Winsford attempted to contact Export Depot's former counsel on April 12, 2  2012, but was informed that they no longer represented Export Depot. Winsford 3  then wrote to Export Depot's president, Guil Hetzroni (signatory to the May 21, 4  2004 Settlement Agreement), requesting that Export Depot cease and desist 5  marketing and sales of the Converging Arches luggage cart given its similarity to 6  Winsford's design. Ex. 7. When no response was received, calls were placed to 7  Export Depot and Mr. Hetzroni responded by phone on May 22, 2012. Ciardullo 8  Decl. ¶ 14. He declined to identify his lawyer, stated that he refused to discontinue 9  sales of the Converging Arches cart, and invited Winsford to take formal legal 10 action if it wished. *Id.* This impasse necessitated the present motion.

### III.   THE COURT HAS JURISDICTION OVER EXPORT DEPOT

Export Depot is a Canadian corporation based in Quebec maintaining a public website at www.hotel-carts.com which offers to sell and sells the accused Converging Arches carts in the U.S. under the "Monarch" brand name. Ex. 6. Export Depot expressly stipulated to the Injunction (*see* Ex. 5, Section 8), which provides at Paragraph 9 that the "Court shall retain jurisdiction of this civil action and the parties to resolve any issues arising from any claim of violation of or noncompliance with this Final Judgment and/or the Settlement Agreement between the parties in settlement of this action." Thus, jurisdiction is proper over Export Depot.

### IV.   APPLICABLE LAW

To establish civil contempt, the plaintiff must "show by clear and convincing evidence that the defendant violated the judgment beyond substantial compliance, and that the violation was not based on a good faith and reasonable interpretation of the judgment." *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th Cir. 1997). The absence of willfulness does not relieve a defendant from liability for civil contempt. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

To prevail on a motion for contempt of a trademark injunction, it is not necessary for the trademark owner to make out a case of infringement as it would in an original proceeding. *Wolfard Glassblowing,* 118 F.3d at 1322 ("a plaintiff … who already has a judgment establishing that the defendant has infringed, is not required to muster all of the evidence it would need to make out an original infringement case in order to prove contempt"). Rather, the plaintiff need only show that the defendant failed to keep a safe distance from infringement:

> an infringer, once caught, should have his conduct carefully scrutinized in any future operations so as to determine his intent in going as far as he does. He must be required to keep a safe distance away from the margin line.

*Virgin Enters., Ltd. v. Virgin Petroleum, Inc.*, No. 99-12826, 2000 U.S. Dist. LEXIS 8100, *20 n. 31 (C.D. Cal. Jan. 19, 2000) (citing *Plough, Inc. v. Kreis Labs.*, 314 F.2d 635, 639 (9th Cir. 1963)); *see also Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1517 (11th Cir. 1990) ("where the appellants have been found guilty of infringing the trademark rights of others, they should thereafter be required to keep a safe distance away from the dividing line between violation of, and compliance with, the injunction. They must do more than see how close they can come with safety to that which they are enjoined from doing").

The Ninth Circuit in *Wolfard Glassblowing* explained that when assessing contempt of a design mark, the proper approach is to visually compare the protected design to the accused design to determine if the defendant has kept a "fair distance" from the line of non-compliance with the injunction (118 F.3d at 3322-23):

> …Although the terms of such an injunction impose a heavier burden on an infringing party with a redesigned mark than is imposed on a newcomer with a similar mark, a party who has once infringed a trademark may be required to suffer a position less advantageous than that of an innocent party…We thus conclude that [plaintiff], in order to establish a violation of this consent decree, need not prove a

7

likelihood of consumer confusion in the same manner that we would require in a trademark infringement case. This conclusion is consistent with the rule that an infringer must keep a fair distance from the margin line…We [] conclude that the district court could properly determine from visual comparison of the [products] that the similarity between them would probably cause consumers to mistake [defendant's product] for [plaintiff's]…

In comparing the products in question, the court should consider the overall impression created by the defendant's accused design, rather than any one feature in isolation. *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 613 (9th Cir. 1989) ("trade dress involves the total image of a product and may include features such as size, shape, color, color combinations, texture, or graphics").

## V. ARGUMENT

### A. Infringement Was Admitted In The 2004 Action

In the 2004 Settlement Agreement, Export Depot acknowledged that it had used Winsford's '820 Mark (Ex. 5, Section 6) and covenanted not to infringe Winsford's '820 Mark in the future (*id*., Section 5). Export Depot also expressly agreed to entry of the Injunction against them. *Id.* at Section 8. Paragraph 6 of the Injunction provides that "Export Depot's use of the '820 Mark…on or in connection with luggage carts is likely to cause purchasers of luggage carts to believe, contrary to fact, that Export Depot's products are manufactured by Winsford, are sponsored or approved by Winsford and/or otherwise endorsed by Winsford." Thus, Export Depot acknowledged that it had infringed Winsford's '820 Mark, and the admission was memorialized in a stipulated court order.

### B. Export Depot's Converging Arches Luggage Cart Does Not "Keep A Safe Distance" From Winsford's Design

The Injunction expressly prohibits Export Depot from making, using, selling or offering to sell any luggage carts having a design confusingly similar to Winsford's '820 Mark. Injunction, ¶¶ 7(a)-(c). That prohibition is made more expansive by the principle that a prior infringer is required to keep a safe distance

from the dividing line between violation of, and compliance with, the injunction. *Virgin,* 2000 U.S. Dist. LEXIS 8100, *20 n. 31; *see also Skydive Ariz., Inc. v. Quattrocchi,* No. 05-2656, 2010 U.S. Dist. LEXIS 49972, *15 (D. Ariz. Apr. 26, 2010) (requirement that accused contemnor keep a safe distance is separate and additional to injunction's prohibition against confusingly similar designs).

As explained by the Ninth Circuit in *Wolfard Glassblowing,* the proper approach in this case is to visually compare the accused Converging Arches design to Winsford's trademarked design to determine whether Export Depot has kept a "fair distance" from Winsford's design. 118 F.3d at 3322-23. In *Wolfard Glassblowing*, the district court had enjoined the defendant from selling "colorable imitations" of the plaintiff's protected oil lamp design, which featured a sphere-shaped oil reservoir. *Id.* at 1333. The Ninth Circuit upheld the district court's finding of contempt where the defendant later sold lamps with tear-shaped oil reservoirs. *Id.* at 1333-34. The district court had found that, in spite of the obvious difference in appearance, the accused tear-shaped lamp did not keep a sufficient distance from infringement of the plaintiff's sphere design. *Id.* Here, similarly, Export Depot's Converging Arches cart too closely mimics the converging posts of Winsford's '820 Mark, and therefore fails to keep a safe distance from non-compliance with the Injunction.

The decision in *GMC v. Ultra Golf Carts, Inc*. demonstrated that the products in question need not even have the same physical size or be sold in the same market to find contempt. No. 02-73853, 2005 U.S. Dist. LEXIS 8839, *18-20 (E.D. Mich. May 13, 2005). In that case, the defendant was found in contempt for selling golf carts having an exterior similar in appearance to plaintiff's full size Hummer trucks. *Id.* The court explained that "because we are not in the context of an initial infringement action, the Court is not required to find every element of an infringement claim in order to conclude that Defendant violated the Permanent Injunction … A product need not look exactly like the protected product nor be an

9

1 exact copy of the trade dress in order to confuse customers." *Id.* at *20-21.

2 In the present case, although Export Depot's Converging Arches cart design
3 is not identical to Winsford's design, it creates an overall impression that is clearly
4 evocative of the '820 Mark. *Vision Sports,* 888 F.2d at 613. To appreciate the
5 similarity of these carts in the eyes of potential consumers, it is helpful to consider
6 their differences from other luggage carts on the market. The traditional luggage
7 cart is largely functional, having a flat bed with wheels and one or more posts for
8 steering and restraining luggage. Many common-place luggage carts add a
9 horizontal pole running across a top portion to support clothes-hangers. Winsford,
10 by contrast, pioneered a stylized luggage cart having four posts converging to an
11 upper center, and over the past decades, Winsford has earned international fame
12 and recognition for its distinctive design. Winsford has also vigorously defended
13 its rights in its design against would-be infringers. *See, e.g.*, C.D. Cal. Case No.
14 90-0651, S.D. Fl. Case No. 92-6982, C.D. Cal. Case No. 95-4333, C.D. Cal. Case
15 No. 12-3343, C.D. Cal. Case No. 12-03676, C.D. Cal Case No. 09-4780, Canadian
16 Federal Court Dkt. Nos. T-1688-08, T-1137-09.

17 The luggage cart market is thus well-defined between carts which have
18 converging posts and those which do not, and those with converging posts will be
19 associated with Winsford. Export Depot's Converging Arches cart does not keep a
20 "safe distance" from the line of non-compliance with the Injunction, and Export
21 Depot should therefore be found in contempt.

22     **C.**     **Export Depot's Contempt Is Willful**

23 Although willfulness is not a necessary element of civil contempt, Export
24 Depot is hardly a good faith actor. Indeed, Export Depot's actions have
25 demonstrated that it intends to trade off of the success of Winsford's trademarked
26 line of luggage carts, and that it cannot be trusted to steer clear of infringement. In
27 2003, after Winsford caught Export Depot selling a counterfeit luggage cart,
28 Export Depot craftily proclaimed that it would stop selling the cart, only to

1 continue selling a slightly modified version. *See* Section II, *supra*. Export Depot
2 failed to comply with Winsford's subsequent calls to cease infringement, forcing
3 Winsford to incur the time and expense of bringing the present lawsuit. *Id.*

4     Here again, Export Depot has thumbed its nose at Winsford's trademark
5 rights. After the 2004 litigation, Export Depot could have chosen to sell any of a
6 wide range of luggage carts not having converging posts — indeed, such carts
7 would likely have been even easier to procure. Export Depot could even have
8 designed its own unique luggage cart without converging posts. Instead, Export
9 Depot made the conscious decision to sell the Converging Arches cart, seeing
10 "how close [it could] come with safety to that which [it is] enjoined from doing."
11 *Howard Johnson,* 892 F.2d at 1517. Export Depot failed to respond in any way to
12 Winsford's April 26, 2012 letter regarding the Converging Arches carts, forcing
13 Winsford to leave phone messages. Ciardullo Decl. ¶ 14. Mr. Hetzroni finally
14 responded on May 22, 2012, refusing to cease sales of the Converging Arches cart.
15 He also mockingly stated that Winsford's attorneys were a "joke" and that they
16 "should not even be lawyers." *Id*. Export Depot's refusal to take seriously its
17 obligations under the Injunction demonstrates that it will continue to flout
18 Winsford's trademark rights unless stopped at this juncture.

19
20     **D.     Winsford Is Entitled To Compensatory Damages And Coercive Sanctions**

21     "Judicial sanctions in civil contempt proceedings may, in a proper case, be
22 employed for either or both of two purposes: to coerce the defendant into
23 compliance with the court's order, and to compensate the complainant for losses
24 sustained." *United States v. United Mine Workers of America*, 330 U.S. 258, 303-
25 04 (1947).

26     In the present case, Winsford's brand has been diluted by the introduction of
27 yet another luggage cart trading off of its well-established, trademarked design.
28 Export Depot knew of the Injunction and had countless non-infringing carts it

11

1  could have chosen to sell, but it made a deliberate decision to promote a luggage
2  cart with curved converging posts.  Export Deport has tread too close to the line of
3  infringement, and compensation is owed to Winsford.

4  Because lost profits are often difficult to establish in trademark cases, a
5  plaintiff who brings a successful contempt motion is frequently awarded the
6  contemnor's profits under a theory of unjust enrichment, and is also routinely
7  awarded attorneys' fees and costs associated with bringing the contempt motion.
8  *See Oddzon Prods. v. Diana Dolls Fashions*, No. 92-20578, 1997 U.S. Dist.
9  LEXIS 4981, *7-8 (N.D. Cal. Jan. 15, 1997) (profits award appropriate); *Guru*
10 *Denim, Inc. v. L.A. Idol Fashion, Inc.*, No. 08-1798, 2012 U.S. Dist. LEXIS 10363,
11 *7-8 (C.D. Cal. Jan. 25, 2012) (awarding profits, fees and costs); *Bd. of*
12 *Supervisors of the La. State Univ. v. Smack Apparel*, 574 F. Supp. 2d 601, 606
13 (E.D. La. 2008) (same); *Manhattan Industries, Inc. v. Sweater Bee by Banff, Ltd.*,
14 885 F.2d 1, 6 (2d Cir. 1989) (explaining appropriateness of profits award).
15 Furthermore, Section 11 of the Settlement Agreement provides that the prevailing
16 party in an enforcement action must be paid attorneys' fees and costs.

17 Winsford therefore requests an order from the Court that Export Depot
18 provide an accounting of profits earned from their sales of the Converging Arches
19 luggage carts in the United States.  Winsford also requests an order requiring
20 Export Depot to pay Winsford's attorneys' fees and costs in bringing the present
21 motion, and upon invitation of the Court, Winsford will submit a declaration of its
22 fees and costs.  Winsford further requests that the Court impose a coercive sanction
23 of $10,000 per week on Export Depot, payable to the Court, until such time as
24 Export Depot complies with the Injunction.  *See Honor Plastic Indus. Co. v.*
25 *Lollicup USA*, Inc., 466 F. Supp. 2d 1217, 1224-25 (E.D. Cal. 2006) (imposing
26 coercive sanctions).

27
28

## VI. CONCLUSION

For the foregoing reasons, Winsford respectfully requests an order finding Export Depot in civil contempt of the Injunction, awarding Winsford Export Depot's profits, awarding Winsford its attorneys' fees and costs in bringing the present motion, and coercively fining Export Depot until it complies with the Injunction.

Dated: July 18, 2012                              FOLEY & LARDNER LLP


                                                  By: /s/ M. John Carson
                                                        M. JOHN CARSON
                                                        Attorneys for Plaintiff
                                                        The Winsford Corporation